UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DAVID K. LAMB,

                Plaintiff,

v.

CORIZON et al.,

                Defendants.

_____/

Case No. 2:18-cv-61

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Corizon, Covert, and LaPlaunt, as well as Plaintiff's claims arising prior to October 16, 2014, and Plaintiff's conspiracy claims. The Court will serve the complaint against Defendants Wilson, Shullick, Lamb, and Crompton with regard to Plaintiff's Eighth Amendment and state law claims.

## Discussion

### I.     Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County and the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  Plaintiff sues Corizon, Nurse Practitioners Susan Wilson and Matthew Shullick, R.N. Patricia Lamb, R.N. Gerald Covert, M.D. Robert Crompton, and Health Unit Manager Melissa LaPlaunt.

Plaintiff alleges that on July 30, 2015, he was seen by Dr. Bonefeld, who ordered adult diapers and referred Plaintiff for an MRI to assess the damage to Plaintiff's vertebrae.  Dr. Bonefeld told Plaintiff that Defendant Wilson did not like him.  On November 30, 2015, Defendant Crompton decided that Plaintiff did not need an MRI, and Defendant Lamb affirmed the decision. On June 3, 2016, Physician's Assistant (P.A.) Barbara Bien-Hoover examined Plaintiff's bulging disc and issued a walking cane and requested an MRI.  The MRI request was approved on June 6, 2016, by Dr. Pependick.

On September 7, 2016, Plaintiff had an MRI performed by Dr. John L. Stephenson, D.O., which showed a small disc bulge at L4-L5, and stenosis at L5-S1.  It also showed diffuse disc, right and left neural foraminal narrowing, disc encroachment, transitional S1 Vertebra, and moderate right neural foraminal narrowing at the L5-S1, second to disc encroachment.  As a result of these findings, Bien-Hoover sent Plaintiff to neurologist Dr. Gary Gurden, M.D., who performed an EMG.  The EMG showed bilateral sural sensory terminal latencies were mildly delayed and both lower extremities show evidence of mild sensory peripheral polyneuropathy.

Bien-Hoover then referred Plaintiff to a neurosurgeon, Dr. Harish Rawal, M.D., who ordered a new x-ray. Dr. Rawal agreed with the findings of Dr. Stephenson and found that Plaintiff suffered from degenerative disc disease, neurological deficits including cauda equina syndrome, degeneration with modic endplate and foraminal stenosis, lumbarized S1 segment, weakness in right dorsiflexion of foot, L5-S1 spondylolisthesis, stenosis, and neurogenic claudication. Dr. Rawal concluded that Plaintiff's degenerative disc disease was long standing.

Plaintiff states that he has long suffered from spinal pain, sciatica nerve pain in both legs, erectile dysfunction, muscle loss, loss of sensation in lower extremities, weakness in lower extremities, and urinary and fecal incontinence. Plaintiff states that Dr. Rawal ordered a back brace and physical therapy. After ten years of suffering in the MDOC, Dr. Rawal performed a laminectomy and spinal fusion on Plaintiff on March 28, 2017. Following surgery, it took Plaintiff three weeks to learn how to walk again. Plaintiff continues to require a cane, a back brace, and prescription shoes. Plaintiff also requires physical therapy three times a week.

Plaintiff claims that Defendants Shullick and Wilson refused to refer him to specialists or to confirm his spinal injury, and that Defendants LaPlaunt and Covert failed to provide protection from the refusal of other Defendants to refer Plaintiff for proper testing and treatment. Plaintiff also contends that Defendant Crompton improperly decided that Plaintiff did not need an MRI and that Defendant Lamb improperly affirmed this denial. Plaintiff claims that Defendants' conduct violated his rights under the Eighth Amendment, state law, and constituted conspiracy. Plaintiff seeks compensatory damages, punitive damages, and costs, as well as declaratory relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff contends that Defendant Corizon failed to properly train its employees, causing him unnecessary suffering between 2013 and 2016, when Plaintiff was examined by Dr. Bien-Hoover.  The failure to train employees may violate the Eighth Amendment "where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the [employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989).  In addition, the deficiency in training must have actually caused the indifference to Plaintiff's medical needs. *Id.*  In addressing a failure to train claim against Corizon Health, the United States District Court for the Eastern District of Pennsylvania stated:

> The Supreme Court has recognized a cause of action for failure to train or discipline employees under § 1983 where liability attaches only after a showing that the failure to train or discipline amounted to a "deliberate indifference to the rights of [others]."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). This "deliberate indifference" standard is an objective standard different than the subjective deliberate indifference standard that is applied under the Eighth Amendment.  See *Farmer v. Brennan*, 511 U.S. 825, 840-847 (1994).  *Canton* teaches that the failure to train an employee must be a choice on the part of the supervisor or supervising entity knowing that the training that is (or is not) being provided is not sufficient for the employees and the choices they encounter on the job.  489 U.S. at 388-90.
>
> To maintain a claim for failure to properly train or discipline, a plaintiff must show that "a responsible municipal policymaker had contemporaneous knowledge of the offending occurrence or knowledge of a pattern of prior incidents of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question or otherwise communicated a message of approval to the offending subordinates." *Garcia v. Cnty. of Bucks*, Pa, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) (citations omitted).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for ... failure to train." *Simpson v. Ferry*, —— F. Supp. 3d ——, 2016 WL 4247546, at *7 (E.D. Pa. Aug. 10, 2016) (internal quotation marks and further quotations omitted).  "A need for training or other corrective action to avoid imminent deprivations of a constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive

measures." *Garcia*, 155 F. Supp. 2d at 268.

*Robinson v. Corizon Health, Inc.*, 2016 WL 7235314, at \*10 (E.D. Pa. Dec. 13, 2016).

      In this case, as in *Robinson*, Plaintiff has not alleged any policy of inadequate training or discipline. Plaintiff has likewise failed to identify what training Defendant Corizon should have instituted to avoid a constitutional violation. Plaintiff's broad assertion that Defendant Corizon failed to properly train employees is entirely conclusory. The Court concludes that Plaintiff's failure to train claim against Corizon is properly dismissed.

      Plaintiff also claims that Defendant Corizon violated his Eighth Amendment rights through a "custom of delay" in providing testing and treatment. Plaintiff claims that the delay in treatment in his case resulted in his erectile dysfunction and long-term nerve damage in his right leg and foot. A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like the Corizon Corporations—can "be sued under § 1983 as one acting 'under color of state law.' " *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir.1993) (quoting *West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.,* 7 F. App'x 459, 465 (6th Cir.2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street v. Corrections Corp. of Am.,* 102 F.3d 810, 817-18 (6th Cir.1996) (same); *Rojas v. Alexander's Dept. Store, Inc.,* 924 F.2d 406, 409 (2d Cir.1990) (same); *Cox v. Jackson,* 579 F.Supp.2d 831, 851-52 (E.D.Mich.2008) (same).

      Consequently, Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation. *See id.* (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability in a § 1983 action cannot be based on a theory of *respondeat superior. Id.* "It is only when the 'execution of the

government's policy or custom . . . inflicts the injury' that the [entity] may be held liable under § 1983." *Id.* (quoting *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (internal quotation marks omitted). A custom is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law." *Bd. of Cnty. Commis of Bryan Cnty. v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Moreover, the policy or custom "must be the moving force of the constitutional violation." *Searcy,* 38 F.3d at 286 (internal quotation marks omitted).

In this case, Plaintiff alleges that Corizon had a "custom of delay" with regard to his treatment, which is evidenced by the continued delays in providing Plaintiff with necessary tests, referrals or treatment. However, Plaintiff fails to allege any facts that show that Corizon had a custom that is "so widespread as to have the force of law," but merely points to the way that he was treated. The Court notes that such allegations are insufficient to support a claim against Defendant Corizon.

Plaintiff claims that Defendants violated his rights under state and federal law and sets forth allegations of misconduct dating back to 2007. However, Plaintiff previously asserted Eighth Amendment denial of health care claims against Defendants Wilson, Shullick, LaPlaunt, and Corizon in Case No. 2:14-cv-218, which was filed in this court on October 16, 2014. That case, *Lamb v. Wilson, et al.*, 2:14-cv-218 (W.D. Mich. 2017), was dismissed by the Court on the merits on May 12, 2017. The Sixth Circuit Court of Appeals affirmed the dismissal on January 16, 2018. Therefore, Plaintiff's claims against Defendants Wilson, Shullick, LaPlaunt, and Corizon that arose prior to October 16, 2014, are barred by the res judicata effect of this Court's decision in *Lamb v. Wilson et al.*, 2:14-cv-218 (W.D. Mich. 2017). The doctrine of claim preclusion, sometimes referred to as res judicata, provides that if an action results in a judgment

on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); *see Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 ( 1980).  In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action as the present case. *Allen*, 449 U.S. at 94; *accord Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  Because the Court's decision in *Lamb v. Wilson, et al.*, 2:14-cv-218 (W.D. Mich. 2017) meets this test, Plaintiff's claims against Defendants Wilson, Shullick, LaPlaunt, and Corizon for conduct that occurred prior to October 16, 2014, are barred.

Plaintiff's claims against Defendants Wilson, Shullick, and LaPlaunt[1] which arose after October 16, 2014, are not barred by the doctrine of res judicata.  Nor are Plaintiff's claims against Defendants Lamb, Covert, and Crompton.  Therefore, the Court will address the merits of these claims.  As noted above, Plaintiff claims that Defendants LaPlaunt and Covert failed to "provide protection" from the refusal of other Defendants to refer Plaintiff for proper testing and treatment.  However, Plaintiff fails to make specific factual allegations against Defendants LaPlaunt and Covert, other than his claim that they failed to properly supervise the other individual

---

[1] As noted above, Plaintiff's claims against Defendant Corizon which arose after October 16, 2014, are properly dismissed for lack of merit.

Defendants.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).   A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants LaPlaunt and Covert engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

Plaintiff claims that Defendants engaged in a conspiracy to violate his Eighth Amendment rights.  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material

facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual health care officials. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. As the Supreme Court has held, such allegations showing that certain individuals acted in the same manner, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the decisions of health care providers regarding Plaintiff's treatment were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

As noted above, Plaintiff asserts that Defendants Wilson, Shullick, Lamb, and Crompton violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated

when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received

12

treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff claims that Defendants Wilson, Shullick, Lamb, and Crompton violated his Eighth Amendment and state law rights by failing to refer him for tests, despite the fact that other health care professionals had previously recommended that Plaintiff receive those tests. The Court concludes that such claims are not clearly frivolous and may not be dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Corizon, Covert, and LaPlaunt will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's claims arising prior to October 16, 2014, and Plaintiff's conspiracy claims. The Court will serve the complaint against Defendants Wilson, Shullick, Lamb, and Crompton with regard to Plaintiff's Eighth Amendment and state law claims.

An Order consistent with this Opinion will be entered.


Dated:   October 3, 2018                          /s/ Janet T. Neff
                                                 Janet T. Neff
                                                 United States District Judge