UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID K. LAMB #188625,                          Case No. 2:18-cv-00061

        Plaintiff,                           Hon. Janet T. Neff
                                            U.S. District Judge
    v.

SUSAN WILSON, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

## I.  Introduction

State prisoner David K. Lamb filed this civil rights action, pursuant to 42 U.S.C. § 1983, on April 19, 2018.  Two Defendants remain in the case.  They are Dr. Robert Crompton, M.D., and Registered Nurse (RN) Patricia Lamb.

Plaintiff alleges that Dr. Crompton and RN Lamb violated his Eighth Amendment by interfering with an MRI ordered by Dr. Bonefeld in July of 2015. Plaintiff alleges that, as a result of this interference, he experienced an unnecessary delay in obtaining appropriate medical care for his back pain and related symptoms. Plaintiff says that he did not receive appropriate medical care until after he received an MRI in September of 2016.  This MRI revealed degenerative disc disease that required spinal fusion surgery in March of 2017.   (ECF No. 1, PageID.6.)   Plaintiff claims that Defendants had a "ministerial duty" to order an MRI once Dr. Bonefeld ordered the MRI in July of 2015.

Defendant Dr. Crompton has filed a motion for summary judgment.   (ECF No. 29.)   He asserts that Dr. Bonefeld "requested" an MRI and did not order an MRI.

Furthermore, Dr. Crompton explains that he examined Lamb on three occasions and concluded that diagnostic imaging was not necessary based upon his exam findings. Thus, he argues that he was not deliberately indifferent to Plaintiff Lamb's medical needs.

This Report and Recommendation addresses the following:

1)    Dr. Crompton's motion for summary judgment.    (ECF No. 29, PageID.208.)

2)    Plaintiff's motion for summary judgment and/or motion for default against Defendant Lamb.   (ECF No. 37, PageID.495 (Plaintiff's response to Dr. Crompton's motion for summary judgment, which also includes a motion for entry of judgment against RN Lamb).)

3)    Plaintiff's emergency motion for an immediate injunction.   (ECF No. 59, PageID.692.)

4)    Plaintiff's motion to amend the complaint.   (ECF No. 66, PageID.746.)

The record establishes that Plaintiff suffered with degenerative disc disease and experienced pain and complications as a result of his spinal injuries.   The Court is not unsympathetic to Plaintiff's concerns.   But the record before the Court indicates that Dr. Crompton saw Plaintiff a total of three times in 2015 and concluded, based on his examinations of Plaintiff, that an MRI was not necessary at that time.   Plaintiff has shown that he had a difference of opinion with Dr. Crompton.   But, Plaintiff has not shown that a genuine issue of material fact exists regarding his Eighth Amendment deliberate indifference claim against Dr.

Crompton.   Accordingly, I respectfully recommend that the Court grant Dr. Crompton's motion for summary judgment.

In addition, Plaintiff's request for entry of a default judgment against RN Lamb should be denied.   In the context of a prisoner civil rights lawsuit, defendants need not file a reply absent an order of the court, and a failure to file a reply does not necessitate entry of a default judgment.   Similarly, defendants need not file a motion for summary judgment, and a failure to do so may not be the basis for entry of a default judgment.

Plaintiff also fails satisfy the requirements for a preliminary injunction, and his motion to amend his complaint appears futile.   Accordingly, I respectfully recommend that the Court deny these motions.

Finally, I respectfully recommend that the Court dismiss Defendant RN Lamb from this case, pursuant to 42 U.S.C. § 1997e(c)(1), because Plaintiff fails to state a claim upon which relief may be granted against her.

## II.  Additional Relevant Procedural History

Lamb filed his complaint on April 19, 2018, alleging violations of the Eighth Amendment, state laws, and a conspiracy claim.   (ECF No. 1, PageID.1.)   Lamb was granted leave to proceed *in forma pauperis*.   (ECF No. 3, PageID.59.)

On October 3, 2018, the Court issued an opinion and order dismissing Defendants Corizon Health, Covert, and LaPlaunt for failure to state a claim upon which relief may be granted.   The Court also dismissed all claims arising prior to October 16, 2014, and the conspiracy claims.   (ECF No. 4, PageID.63; 5, PageID.76.)

The Court ordered service of the complaint on Defendants Wilson, Shullick, Lamb, and Crompton as to Plaintiff Lamb's Eighth Amendment and state law claims. (ECF No. 4, PageID.75.)

The order for service authorized the U.S. Marshal's Service to make a "request for waiver of service" from each Defendant.   (ECF No. 5, PageID.77.)   The U.S. Marshal's Service made requests for waiver of service on November 5, 2018.   On November 29, 2018, Defendants Crompton and Wilson filed waivers of service.   (ECF Nos. 15 and 16.)   Attorney appearances were made on behalf of Defendants Crompton, Wilson, and Shullick.   A second notice requesting waiver of service for Defendant Lamb was made on December 13, 2018.   On February 21, 2019, Defendant Lamb filed a waiver of service.   (ECF No. 27.)

On March 12, 2019, Defendants Wilson, Shullick and Crompton filed a motion for summary judgment.   (ECF No. 29, PageID.208.)   These Defendants are represented by the Chapman Law Group.   Defendant Lamb, who is represented by the Michigan Attorney General's Office, has not filed a motion for summary judgment.

On April 11, 2019, Plaintiff filed a motion to dismiss all claims against Defendants Wilson and Shullick and all claims under state law.   (ECF No. 36, PageID.493.)   This Court subsequently granted this motion, thus dismissing Shullick and Wilson, as well as Plaintiff's state law claims.   (ECF No. 71, PageID.758.)

4

After Plaintiff filed his motion to dismiss two Defendants and some of the claims (ECF No. 36), the pleadings became more complicated.    Plaintiff filed a response to Dr. Crompton's pending motion for summary judgment.    (ECF No. 37, PageID.495.)    In his response, Plaintiff also requested entry of a default or summary judgment against Defendant Lamb.

Dr. Crompton filed a reply to Plaintiff's response / motion for judgment.    (ECF No. 39, PageID.539.)    And Defendant Lamb responded to Plaintiff's request for entry of a default or summary judgment against her.    (ECF No. 40, PageID.543.)

Plaintiff then filed a sur-reply to Dr. Crompton's reply (ECF No. 42, PageID.592), which caused Dr. Crompton to file a motion to strike (ECF No.48, PageID.630).

Plaintiff also filed a reply to Defendant Lamb's response.    (ECF No. 46, PageID.612.)

Beginning two additional lines of motions, Plaintiff filed a motion for a preliminary injunction on December 2, 2019 (ECF No. 59, PageID.692), and a motion to amend his complaint on December 26, 2019 (ECF No. 66, PageID.746).    Both Defendants responded to Plaintiff's motion for preliminary injunction (ECF No. 63, PageID.711, ECF No. 64, PageID.728).    Only Defendant Lamb has responded to Plaintiff's most recent motion to amend.    (ECF No. 68, PageID.750.)

## III.    Factual Allegations

Plaintiff says that on July 30, 2015, he was examined by Dr. Bonefeld, who ordered adult diapers and referred him for an MRI to assess the damage to his

vertebrae.  (ECF No. 1, PageID.3.)    Plaintiff says that on November 30, 2015, Defendant Crompton decided that an MRI was unnecessary, and Defendant Lamb subsequently affirmed that decision.  (*Id.*, PageID.3-4.)

On June 3, 2016, Physician's Assistant (PA) Barbara Bien-Hoover examined Plaintiff's bulging disc, issued a walking cane, and requested an MRI.  (*Id.*, PageID.4.)  The MRI request was approved on June 6, 2016, by Dr. Pependick. (*Id.*)

On September 7, 2016, Plaintiff had an MRI performed by Dr. John L. Stephenson, D.O.  (*Id.*)  The MRI showed a small disc bulge at L4-L5, and stenosis at L5-S1.  (*Id.*)  It also showed diffuse disc, right and left neural foraminal narrowing, disc encroachment, transitional S1 Vertebra, and moderate right neural foraminal narrowing at the L5-S1, second to disc encroachment.  (*Id.*)  As a result of these findings, Plaintiff says that Bien-Hoover sent him to see to neurologist Dr. Gary Gurden, M.D., who performed an electromyogram (EMG).  (*Id.*)  The EMG showed that Plaintiff's bilateral sural sensory terminal latencies were mildly delayed and both lower extremities showed evidence of mild sensory peripheral polyneuropathy.  (*Id.*)

Plaintiff says that Bien-Hoover then referred him to a neurosurgeon, Dr. Harish Rawal, M.D., who ordered a new x-ray.  (*Id.*)  Plaintiff claims that Dr. Rawal agreed with the earlier findings and determined that Plaintiff had degenerative disc disease, neurological deficits including cauda equina syndrome, degeneration with modic endplate and foraminal stenosis, lumbarized S1 segment, weakness in right

dorsiflexion of foot, L5-S1 spondylolisthesis, stenosis, and neurogenic claudication. (*Id.*, PageID.4-5.)   Plaintiff says that Dr. Rawal concluded that the degenerative disc disease was long standing.   (*Id.*, PageID.5.)

Plaintiff states that he has long suffered from spinal pain, sciatica nerve pain in both legs, erectile dysfunction, muscle loss, loss of sensation in lower extremities, weakness in lower extremities, and urinary and fecal incontinence.   (*Id.*, PageID.5.) Plaintiff says that after ten years of suffering, Dr. Rawal performed a laminectomy and spinal fusion on March 28, 2017.   (*Id.*, PageID.6.)

Plaintiff complains that despite his surgery, he is still suffering from symptoms of degenerative disc disease, including severe pain and incontinence.   (ECF No. 59, PageID.692.)   Plaintiff says that his request for adult papers and pain medications have been denied.   (*Id.*)   For these reasons, Plaintiff has moved for injunctive relief. (*Id.*)

## IV.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## V.  Analysis of Lamb's Eighth Amendment Deliberate Indifference Claim

### A. Legal Standards

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  "[A]n inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the

detrimental effect of the delay in medical treatment to succeed."    *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted).    The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added).    Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition:    A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."    *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).    Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."    *Id.*    Under *Farmer*, "the

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Id.* at 837.   The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018).   The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference.   Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness."   This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.

> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."   A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful.   A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals."   That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort

law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).   He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

## B.   Defendant Dr. Crompton

Plaintiff's chief complaints against Dr. Crompton and RN Lamb begin with an Dr. George Bonefeld's decision to order an MRI for Plaintiff.   Dr. Bonefeld examined Plaintiff on July 30, 2015, for complaints of back pain.   (ECF No. 29-3, PageID.276-282.)   Plaintiff explained that about two weeks earlier he began to experience sharp pain extending down his thighs and fecal incontinence about once daily.   (*Id.*)   He explained that this had occasionally happened in the past, but never persistently. (*Id.*)   The consultation notes show that Dr. Bonefeld "requested" an "MRI with Gadloinium Lumbar Spine."   (*Id.*, PageID.279.)   Dr. Bonefeld noted that Plaintiff had a normal lumbar spine x-ray in 2013.   (*Id.*)

On August 3, 2015, Plaintiff was examined by Nurse Practitioner Jennifer R. Russel.  (*Id.*, PageID.285-288.)   Plaintiff noted that he was involved in a motor vehicle accident in 2007 and, while an MDOC inmate, was using over 700 pounds to perform a weightlifting exercise known as squats.  (*Id.*, PageID.285.)   Plaintiff reported that he had chronic lower back pain and that his symptoms had worsened over the last month.   (*Id.*)

The medical records indicate that Defendant Dr. Crompton examined Plaintiff on **August 5, 2015**, for complaints of back pain beginning in 2007, which he also attributed to excessive weight training.   (ECF No. 29-3, PageID.293-294.)   Plaintiff reported pain and weakness in his lower back and fecal incontinence.  (*Id.*)   Dr. Crompton's physical examination notes from that day are shown below.

**Physical Exam**
**Constitutional:**  No apparent distress.  Well nourished and well developed.
**Rectum:**
Normal sphincter tone.
Comments: Inferior aspect of prostate gland without nodules Unable to palpate entire gland..
**Back / Spine:**
Comments: Spine is n/t. No spasm or deformity. Mild to moderate decrease bilat rotation, as well as with flexion and ext of lumbar spine. Assoc slow, guarded attempts at displaying ROM. This pattern resolves during flexion for DRE, as well as when he pulls his pan
**Musculoskeletal:**
Comments:  No atrophy to LE's, with symmetric muscle mass. Motor is 5/5 to extension of knees, and plantar and dorsiflexion at the ankles. Able to toe and heel walk. No figeting, or frequent change to position while seated. No distress evident. Also displaying smooth, direct, and rapid movements, going from sitting to supine, and back to sitting.
**Neurological:**
Level of Consciousness:  Normal.
Orientation:  Alert and oriented X 3. Grossly normal intellect. .
Memory:  Intact. .
Balance & Gait:  Balance and gait intact. .
Deep Tendon Reflexes:  DTR's preserved and symmetric. .
Comments:  Frequently distant affect during interaction. Patellar and Achilles reflexes 1+ bilaterally.

(*Id.*, PageID.294.)

Dr. Crompton found "no actual significant neurologic compromise" and provided pain medication.   (*Id.*)   Dr. Crompton's assessment, plan and medications ordered are shown below.

Lumbar x-rays 2/26/13 interpreted as normal.

**Assessment/ Plan**
**Lumbago** (724.2), Fair.
Plan comments:  Complaints of intermittent fecal incontinence is of obvious concern, however he displays no sphincter tone. This, in addition to various inconsistencies to H and P, are reassuring that there is no actual significant neurologic compromise. Rx for naprosyn is provided, in addition to increasing the dose for pantoprazole. F/u appt is scheduled for 1 month, earlier should sx progress.

**Medications ordered this visit**

| Start Date | Stop Date | Medication Name | Sig Desc |
|---|---|---|---|
| 08/06/2015 | 08/06/2016 | pantoprazole 40 mg tablet,delayed release | 1 daily |
| 08/06/2015 | 08/06/2016 | Naprosyn 375 mg tablet | 1, twice daily, only for flares to low back pain. |

(*Id.*)

Plaintiff continued to receive disposable adult briefs.   (*Id.*, PageID.300-301.)

On November 20, 2015, RN Monroe entered a Clinical Progress Note to indicate that there had been no response to the MRI request, and that Lamb would be scheduled for a chart review by an MP to address this issue.   (*Id.*, PageID.302.)

On **November 30, 2015**, Defendant Dr. Crompton examined Plaintiff for a nutrition evaluation.   (*Id.*, PageID.304.)   The results of the physical examination as well as Dr. Crompton's assessment/plan are shown below.

<u>Physical Exam</u>
**Constitutional:**  No apparent distress.  Well nourished and well developed.
**Genitourinary:**

Comments:  No bladder distension.
**Rectum:**
Comments: REfuses the rectal exam, stating 'I'm Muslim'. "I am not going to allow anyone to check me down there again".
**Back / Spine:**
Inspection reveals Decreased resting lordosis LS. Lumbar curvature is/has kyphosis, fixed. No scoliosis. Spine is negative for posterior tenderness. Normal flexion.  Normal lateral flexion.
 Right angle rotation is 60 degrees between shoulder & pelvis. Left angle rotation is 45 degrees between shoulder & pelvis.
**Musculoskeletal:**
Comments:  Dieplays normal, relaxed posture, wihtout evidence of discomfort of figeting, during prolonged interview (~30 minutes). ABle to toe and heel walk. Patellar reflex 2+, 2+. Well developed musculature, with symmetric muscle mass to LE's.
**Neurological:**
<u>Level of Consciousness:</u>  Normal.
<u>Orientation:</u>  Alert and oriented X 3. Grossly normal intellect. .
<u>Balance & Gait:</u>  Balance and gait intact. .


<u>Assessment/ Plan</u>
**Lumbago** (724.2)
Plan comments:  Asked what he would like accomplished, and he states that he would like to have an MRI, or a CT scan, so that he can sue Corizon. He ammends this to wanting to determine what is wrong with his back, because he is tired of doing stretches and taking pills, and he wants to determine who he needs to name in his suit, those that don't provide him with what he wants. 'According to my Merck Manual, you must provide this test'. I advise Mr Lamb that my evaluation indicates he doesn't need further imaging at this time, to shich he responds, "OK, I think we're done here". N o changes are made. He announces to the waiting area as he leaves the unit, "look out, the doctor is lookikng to stick his fingers up you ass".


(*Id.*, PageID.305.)

On **December 11, 2015**, Defendant Dr. Crompton examined Plaintiff for cardiovascular and gastrointestinal complaints.  (*Id.*, PageID.308-310.)  On physical examination, Plaintiff presented in no apparent distress.  (*Id.*, PageID.309.) Notes from Dr. Crompton's physical examination are shown below.

**Physical Exam**
**Constitutional:**  No apparent distress.  Well nourished and well developed.
**Nose / Mouth / Throat:**
Buccal Mucosa: Normal buccal mucosa
Palate & Uvula: appear symmetric and normal
Tonsils: No tonsillar hypertrophy or exudates
Oropharynx:  No pharyngeal erythema or exudates or mucosal lesion
**Neck / Thyroid:**
No thyromegaly or thyroid nodules detected.
**Respiratory:**
Chest can be described as symmetric.  Lungs clear to auscultation.  There is no cough.  Respiratory effort is normal.
**Cardiovascular:**
Heart Sounds:  NL S1, NL S2.
Rate and Rhythm:  Heart rate is regular rate.  Rhythm is regular.
Comments: tr bilat PPE..
**Abdomen:**
Abdomen is obese.
Symmetric - no distention.  Soft, nontender, no organomegaly.
There is no abdominal tenderness.
**Back / Spine:**
Comments: Goes sitting to supine, and later back to sitting, with smooth, direct, and rapid movements. No assoc distress evident.
**Musculoskeletal:**
Comments:  Standing casually, leaning on the exam table, during the interview. Relaxed, withotu figeting, or any distress dvident.
**Neurological:**
Level of Consciousness:  Normal.
Orientation:  Alert and oriented X 3. Grossly normal intellect. .
Memory:  Intact. .
Balance & Gait:  Balance and gait intact. .

(*Id.*)

In the opinion of the undersigned, Plaintiff has failed to present evidence establishing a genuine issue of material fact relating to Plaintiff's deliberate indifferent claim against Dr. Crompton for two reasons.

**First**, most importantly, Plaintiff has not presented evidence establishing a genuine issue of material fact as to the subjective component of his claim.   As explained in *Rhinehart*, "[a] doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference.   Instead, the plaintiff must show that each defendant acted with a mental state 'equivalent to criminal recklessness.'"   894 F.3d at 738 (citation omitted).   Plaintiff has not made this

showing.   Dr. Crompton treated Plaintiff three times.   He attempted to diagnose Plaintiff's conditions.   Although Plaintiff's condition was ultimately found to be more serious than Dr. Crompton found, that fact alone does not show that Dr. Crompton was acting with what amounts to criminal recklessness.

What Plaintiff has shown is a disagreement with a doctor who saw him three times.   But this is not enough to establish a genuine issue of material fact.   "A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment."   *Id*. at 744 (citation omitted).

**Second**, Plaintiff's contention that Dr. Crompton violated his Eighth Amendment rights by "interfering" with Dr. Bonefeld's request for an MRI is not supported by facts in the record.   It is undisputed that Plaintiff was not given an MRI in 2015 despite Dr. Bonefeld's request for one on July 30, 2015.   But Plaintiff has not shown that Dr. Crompton was in a position to deny Dr. Bonefeld's request for an MRI.   As shown above, Dr. Crompton's only involvement in this case was to evaluate Lamb on three occasions between August 5, 2015, and December 11, 2015. At his November 30, 2015 examination, Lamb specifically requested an MRI.   Dr. Crompton informed Lamb that his evaluation did not justify any orders for further imaging.   Dr. Crompton did not deny Dr. Bonefeld's request.   Crompton simply did not think an MRI was warranted based on his own assessment of Plaintiff's condition.

## VI.   Plaintiff's Motion for Injunctive Relief (ECF No. 59, PageID.692)

Plaintiff filed an emergency motion for injunctive relief.   (ECF No. 59, PageID.692.)   Plaintiff says that he continues to experience symptoms from his

spinal cord damage such as incontinence, and that he is being denied adult pampers and is forced to lie in his own waste.   Plaintiff asks the Court to order nondefendants Wilkerson, MDOC, Corizon Health, Rexford, Mitterr, and Asche to issue him adult pampers.   Plaintiff is no longer housed at the facility where Defendants Lamb and Crompton are employed.   He is now housed at the Muskegon Correctional Facility.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies."   *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court.   *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).

In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.   *Id.*   These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.   *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009.

Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique

nature of the prison setting.    *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).    The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.    *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action.    *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).    Plaintiff has not made such a showing. A review of the materials of record fails to establish a substantial likelihood of success with respect to Plaintiff's underlying claims.    In addition, Plaintiff has failed to support his claim that any Defendant denied him adequate medical care.

Moreover, Plaintiff is seeking injunctive relief against individuals who are not Defendants in this case.    The Court does not have jurisdiction over individuals that are not parties to this action.    *Zenith Radio Corp., v. Hazeltine Research Inc.*, 395 U.S. 100 (1969).

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.    Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.    The public welfare therefore militates against the issuance of extraordinary relief in the prison

context, absent a sufficient showing of a violation of constitutional rights.    *Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).   That showing has not been made here. For these reasons, it is respectfully recommended that the Court deny Plaintiff's motion for injunctive relief.

## VII.  Motion for Leave to Amend (ECF No. 66, PageID.746)

Plaintiff filed a motion for leave to amend his complaint to add the words "imminent danger" to his complaint.   (ECF No. 66, PageID.746.)   Plaintiff explains that he made this request in response to the Defendants' motion to revoke his *in forma pauperis* status.   The Court has already revoked Plaintiff's *in forma pauperis* status.   (ECF No. 71.)   Adding the words "imminent danger" to the complaint cannot avoid the effect of the three strikes rule.   *Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580 (6th Cir. 2013).   The Court looks to the facts alleged at the time the complaint is filed when determining whether a prisoner is in imminent danger of serious harm.   *Id.*

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).   However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality."   *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995).   The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile.   *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996).   In the opinion of the

undersigned, Plaintiff's motion to amend his complaint to add the words "imminent danger" is futile and should be denied.

## VIII. Plaintiff's Motion for Default Judgment Against Defendant Lamb (ECF No. 37, PageID.495)

To the extent that Plaintiff's response to Dr. Crompton's motion for summary judgment also constitutes a motion for entry of default or summary judgment against RN Lamb, that motion should be denied.    Plaintiff argues that Defendant RN Lamb is in default for two reasons:    (1) she failed to waive service of process upon the first request by the U.S. Marshals Service, and (2) she failed to respond to Plaintiff's complaint by filing a summary judgment motion.    The undersigned concludes that Defendant RN Lamb is not in default.

The U.S. Marshals Service first requested waiver of service from Defendant RN Lamb in November of 2018.    Defendant Lamb did not return an executed waiver of service, so a second waiver of service was made to Defendant R Lamb in December of 2018.    Defendant Lamb executed the waiver of service on February 4, 2019. (ECF No. 27, PageID.206.)    Defendant Lamb is not in default.    She has waived service of the summons and complaint and she has appeared in this case.

Similarly, Defendant RN Lamb is not required to file a motion for summary judgment.    No party is required to file a dispositive motion in any case.    The Court's November 30, 2018 case management order provided as follows:

1.  <u>RESPONSE TO THE COMPLAINT</u>:  By virtue of <u>42 U.S.C. § 1997e(g)(1)</u>, no defendant is required to file a response to the complaint.  The only action required of any defendant is the filing of an appearance within the time allowed by the Court's order of service.   No default will be entered against any defendant for exercising the right under section 1997e(g)(1) not to respond to the complaint.   If, after the close of the dispositive motion period under paragraph 5 of this order, no response has been filed, the Court may direct the filing of an answer.

(ECF No. 18, PageID.181.)

Furthermore, 42 U.S.C. § 1997e(g) provides that any Defendant in a prisoner civil rights lawsuit may waive the filing of a reply.   Therefore, default in a prisoner civil rights lawsuit is never appropriate when a defendant fails to reply to a complaint until ordered by the court to do so.   *See Coleman v. Gullet*, No. 12-10099, 2012 WL 5986769, at *3 (E.D. Mich. July 30, 2012) (recommending denial of motion for default judgment), report and recommendation adopted, No. CIV.A. 12-10099, 2012 WL 5986679 (E.D. Mich. Nov. 29, 2012).   This Court has not ordered any Defendant to file a reply to the complaint.   Accordingly, entry of default is not an appropriate remedy in this case.

## IX.    Recommendation for Dismissal of Defendant RN Lamb Pursuant to 42 U.S.C. § 1997e(c)

Pursuant to 42 U.S.C. § 1997e(c)(1), the Court may, on its own motion, dismiss an action brought under 42 U.S.C. § 1983 if the Court is satisfied that the action is "frivolous, malicious, [or] fails to state a claim upon which relief can be granted."   As the parties are aware, the Court normally screens out clearly deficient claims at the beginning of a case.   And, as noted above, the Court did so here.   Nevertheless, in light of additional filings by the parties, it is clear that Plaintiff's claim against Defendant Lamb should be dismissed.

As Plaintiff explained in ECF No. 37, Defendant Lamb's involvement in this case stems from her review of grievances filed by Plaintiff.  (ECF No. 37, PageID.498.)   On November 11, 2015, Plaintiff filed a grievance asserting that he was denied an MRI after Dr. Bonefeld made the request for one.   (ECF No. 37-1, PageID.513.)   The grievance was denied at Step I and Defendant RN Patricia Lamb denied the grievance at Step II. (*Id*., PageID.516.)

Lamb filed another grievance regarding the issue on September 22, 2016. (ECF No. 37-1, PageID.518.)   On November 21, 2016, Defendant RN Patricia Lamb responded at Step II stating:

**Grievance Step II Response**                                   LAMB 188625

Grievant claims that recent MRI results and a provider visit on 9/22/16 re: same have led him to the conclusion that he was inappropriately denied an MRI by Dr. Crompton on 11/30/15 and 12/11/15. Grievant appears to be attributing the scope and severity of his current symptoms to this denial re: the subsequent delay in treatment of the underlying cause of those symptoms.

This issue has already been addressed, in part, in response to the Step II appeal re: grievance ECF-2015-11-3283-12Z. As written in that response, dated 12/16/15, *"Review of the electronic medical record confirms that grievant has been evaluated on many occasions re: his back pain with treatment ordered as indicated. It is noted that a consult request for an MRI was generated on 7/30/15 but no response to that request is recorded. The matter was brought to the attention of the ECF physician and was addressed during grievant's provider visit of 11/30/15. The provider determined that no further imaging is indicated at this time. Grievant was seen again by the provider just a few days ago on 12/11/15. Per the provider's notes, grievant is doing well and no changes to the current treatment plan are indicated. Off-site consultation does not appear to be under active consideration at this time."*

Review of the electronic medical record subsequent to the above response reveals that grievant was next evaluated by a provider on 3/11/16 re: complaints of back pain and intermittent incontinence. Medications were adjusted and a lumbar spine x-ray was obtained with normal results. Grievant was transferred to MCF on 5/24/16 and was seen by an MCF provider on 6/3/16. A request for an MRI was submitted and approved at that time. The MRI was scheduled for 7/19/16 but could not be completed due to grievant's intense, previously unknown, claustrophobia. A second attempt on 8/3/16 was again unsuccessful for the same reason, despite the administration of an oral anti-anxiety medication prior to the procedure. The MRI was finally completed successfully on 9/7/16. An EMG was subsequently completed on 11/2/16. A neurosurgery consultation has been approved and is pending at this time.

While grievant's concern re: his symptoms is acknowledged and understood, grievant is reminded that his disagreement with the plan of care does not constitute a denial of treatment. Medical providers have ordered those interventions deemed medically necessary based on grievant's presentation at any given time. Grievant is encouraged to follow the plan of care as instructed and is advised to promptly notify Health Care should any adverse symptoms persist or worsen pending the off-site consultation referenced above.

Grievance denied.                                    *l2*

(*Id.,* PageID.520.)

Defendant RN Lamb only responded to the grievances that Plaintiff Lamb filed. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly

acquiesced in, the allegedly unconstitutional conduct.    *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982).   "A defendant's involvement in the denial of an administrative grievance is insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983." *O'Brien V. Mich. Dep't of Corrections*, 592 F. App'x 338, 341-42 (6th Cir. 2014) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Title 42, United States Code, §1997e(c)(1) provides that a Court may dismiss any action with respect to prison conditions by a prisoner if the Court is satisfied that the action is frivolous, malicious, or fails to state a claim upon which relief can be granted.    In making this assessment, the Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).   As noted above, the basis for Plaintiff's case against RN Lamb – her involvement in the grievance process – is insufficient to show personal involvement in the alleged unconstitutional conduct.   Thus, in the opinion of the undersigned, Plaintiff's claim against Defendant RN Lamb fails to state a claim upon which relief can be granted.

## X.   Recommendation

As mentioned in the introduction, the Court is not unsympathetic to Plaintiff's concerns.   But it is clear from the record that no genuine issue of material fact exists with respect to Plaintiff's claim against Dr. Crompton, and Plaintiff's claim against

RN Lamb fails to state a claim upon which relief can be granted.    Thus, I respectfully recommend that the Court:

1)    GRANT Defendant Dr. Crompton's motion for summary judgment.    (ECF No. 29, PageID.208.)

2)    DISMISS Defendant RN Lamb from this proceeding under 42 U.S.C. §1997e(c)(1) due to Plaintiff's failure to state a claim upon which relief may be granted.

3)    DENY Plaintiff's motion for summary judgment and for default against RN Lamb.    (ECF No. 37, PageID.495.)

4)    DENY Plaintiff Lamb's emergency motion for an immediate injunction. (ECF No. 59, PageID.692.)

5)    DENY Plaintiff Lamb's motion to amend his complaint.    (ECF No. 66, PageID.746.)

If the Court accepts this recommendation, this case will be dismissed.

NOTICE TO PARTIES:    Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.    28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).    Failure to file timely objections constitutes a waiver of any further right to appeal.    *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).    *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    March 2, 2020                         /s/ *Maarten Vermaat*
                                                         MAARTEN VERMAAT
                                                         U.S. MAGISTRATE JUDGE

- 26 -